OPINION OF THE COURT
Timothy J. Sullivan, J.
These are consolidated proceedings to review assessments on real property located at 72 Pondfield Road West, Bronxville, New York, pursuant to article 7 of the Real Property Tax Law.
*423 The property is designated on the tax and assessment map as section 11, block 2, lot 1.
The assessments under review are those for the years 1976, 1977, and 1978.
The subject property consists of a co-operative apartment building containing 52 apartments plus a superintendent’s apartment in the basement. The improvements were constructed in 1959 on 81,709+ square feet of land. During each of the years under review, the total town assessment on the subject property was $810,650 and the total town assessment on the subject property was $810,650 and the total village assessment was $1,662,400.
The court therefore has before it the issue of what is the best approach to determine the fair market value of a cooperative building for tax assessment purposes. Mr. Lane, the petitioner’s expert, relied on the income approach, Mr. Albert relied on the Market Approach. Both appraisers indicated that they did so to some extent on the instruction of counsel, although they each affirmed their belief in their methods being the best method to value a co-operative building. As counsel for the respondent, Village of Bronxville, states in his posttrial brief, "The issue presented by this case is one of first impression so far as research has disclosed for the Courts of this State, which is: Is it proper to use a market data approach in tax certiorari proceedings to determine the full value of a cooperative building based upon the values of the individual cooperative units and relying upon actual sales of the units in the subject property and sales of comparable units in the immediate area?”
This presents a question of first impression because in the reported cases involving the review of assessments on co-operative apartment buildings, the experts employed by the litigants utilized the income approach to value. (See Matter of Milton Harbor Co. v Assessor of City of Rye, 47 AD2d 632; Matter of 800 Fifth Ave. Corp. v Tax Comm. of City of N. Y., 20 AD2d 879, affd 17 NY2d 794.)
The court is aware of no opinion of a trial or appellate court, and counsel has found no such cases where the court has specifically held that an income approach, or for that matter any other particular approach to valuing real property, was the sole and exclusive method of correctly valuing a co-op. The law is not so restrictive. While section 306 of the Real Property Tax Law requires all property to be assessed at *424 full value, there is no legislative directive specifying a particular method for establishing value. (Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau, 45 NY2d 538.) There is no question but that capitalization of the net income is ordinarily preferred as providing the safest basis for appraising and determining the fair market value of investment property. (People ex rel. Gale v Tax Comm. of City of N. Y., 17 AD2d 225.) The income approach to value is normally utilized by the court to determine the fair market value of investment type apartment buildings. (People ex rel. Parklin Operating Corp. v Miller, 287 NY 126; City of Buffalo v Joseph Davis, Inc., 32 AD2d 604, affd 26 NY2d 869.) As clearly established by the testimony of both expert appraisers in this case, it is clear that the River House is not income producing property. To adopt an income approach to valuing this building would require the court to engage in pure speculation as to what its potential net income would be if the building were something that it clearly is not, and according to the experts, probably never will be.
Furthermore, the use of an income approach to value would completely omit numerous ownership benefits outlined by both appraisers since there would be no way of including an allowance for those benefits in the capitalization process to adequately represent their values to the owners. On the other hand, while the market approach to value may be somewhat speculative only to the extent that there are, according to the experts, no known instances of entire co-operative buildings being sold in the State of New York, actual sales of units within the River House and other comparable co-operative apartment buildings in the immediate vicinity are available and have been submitted to the court by Mr. Albert under his market approach.
The court is of the opinion that these sales, as adjusted to the subject, more accurately reflect the value of the River House than does an income approach which is not even partially based upon reality. This can readily be seen by the fact that the average unit value under Mr. Lane’s approach is approximately $31,000 compared with a range of $50,100 up to $108,000 for units selling within the River House during the period June, 1975 through December, 1977.
The petitioner urges that in view of section 339-y of the Real Property Law and Matter of Marks v Pelcher (58 AD2d 812) and the subsequent decision upon retrial by Mr. Justice *425 Farley, reported in the New York Law Journal (June 14, 1978, p 16, col 4), that the court must adopt an income approach to value. Subdivision 1 of section 339-y provides that with respect to condominiums, "In no event shall the aggregate of the assessment of the units plus their common interests exceed the total valuation of the property were the property assessed as a parcel.” In Matter of Marks v Pelcher (supra), the trial court adopted a market approach in valuing a condominium apartment building, which was rejected by the Appellate Division since utilization of that approach resulted in a higher value than if the property had been appraised as a conventional apartment house. On retrial, Justice Farley found new values by applying an income approach by virtue of the Appellate Division’s decision, although he clearly doubted the accuracy of an income approach in such case. He stated: "The most disturbing factor concerning the use of the income approach is the unanimous agreement among published authorities that the realities of the market place preclude its application when condominium development constitutes the highest and best use of the land (citing authorities).” (NYLJ, June 14, 1978, p 16, col 5.) He further commented on the respondents’ use of a market approach involving the hypothetical sale of the entire complex to a single user and correctly pointed out: "The impracticality of this approach compels its rejection. Clearly, if all 224 owners sold at market value, there would be no margin of profit which the purchaser could realize on the resale of the units, and he would, in addition, incur the expense of maintaining the property over his sellout period.” (Ibid.)
First of all, this court holds that section 339-y of the Real Property Law does not apply to co-operative apartment buildings and Matter of Marks v Pelcher (supra) does not require condominium treatment for co-ops.
This court was concerned with using a market approach to valuing a co-op for the very reason referred to by Mr. Justice Farley in his decision upon the retrial of the Marks case, namely, the lack of a margin of profit to a prospective purchaser and the problems and expenses incurred in maintaining such property during a sell out. In the case now before the court, Mr. Albert’s approach to value has made allowances for these items by discounting the values he found in his market approach by 20% to cover these items. The court finds from the record in this case that the Albert approach more accu *426 rately reflects the true market value of the subject property in keeping with the realities of the marketplace and without indulging in extensive speculation by valuing it under an income approach as an entity which it clearly is not, never has been, and probably will never be.
For all of the foregoing reasons, the court finds that the fair market value of the subject property during the years under review was that found by Mr. Albert under his market approach to value: for 1976, $3,346,700; for 1977, $3,496,400; and for 1978, $3,658,500.
Upon application of the stipulated equalization ratios for both the town and village to the afore-mentioned fair market values of the property as found by the court, the assessments on the subject River House for each of the years under review are sustained.
All motions on which the court reserved decision during the trial are hereby denied.
[Portions of opinion omitted for purposes of publication.]