HOPKINS, J. T. C.
This case involves appeals from judgments of the Bergen County Board of Taxation which determined the assessed values of a cooperative apartment building and land for the tax years 1973 through 1978.
The property involved is known as Block 201, Lot T-2, in the taxing district of Fort Lee and is located at 1500 Palisade Avenue in said district.
Plaintiff taxpayer has agreed that the original assessments are correct if the proper method of valuing the subject cooperative apartment building places predominant reliance on the sales of stock and proprietary leases.
Defendant municipality has moved for summary judgment since the only issue to be resolved is the methodology in determining an assessed value for the property. At the hearing on the motion there was testimony from an expert real estate appraiser for each party.
The facts, which are not in dispute, are that the subject property is improved with a 30-story and basement luxury apartment building containing 176 apartments, automobile garages and parking accommodations, two tennis courts, a swimming pool and various other conveniences. The building was constructed with the intent to have it operated as a cooperative apartment house. On April 5, 1973 the property was conveyed by Southbridge Park Associates, a limited partnership, to South-bridge Park, Inc., for a stated consideration of $18,017,436.50. This amount represented the amount which the sponsors of the cooperative corporation anticipated would be realized on the sale of its stock. That purchase price could change depending on the *32 success or failure of stock sales. According to the original prospectus, 65,250 shares of stock were offered for sale, in various designated blocks, at a sale price of $128.00 a share and an allocation of the corporate mortgage of $159.39 a share. Each block of stock entitled the purchaser to a proprietary lease of a specific apartment and the right to occupy the apartment. The tenant-shareholders were responsible for the cost of electricity used in the apartments as well as the cost of decorating and of maintaining and repairing all equipment in the apartments. Once having acquired the shares and proprietary lease, the owner was liable for a monthly proprietary rent to maintain the public areas and corporate equipment. Said rent also included the shareholders’ pro rata share of the payment of the corporate mortgage indebtedness as well as local property taxes.
The corporate shares had a restrictive legend that ownership was restricted to holders of proprietary leases. The prospectus and the corporate by-laws state that the cooperative apartment corporation was to provide residences for its stockholders.
Once a cooperative corporation becomes operational, its shareholders elect a board of directors and the apartment building is either solely managed by its officers or in conjunction with professional management.
Pursuant to Internal Revenue Code § 216, a tenant stockholder of a cooperative housing corporation may deduct the tenant’s allocable portion of real estate taxes and mortgage interest on the tenant’s federal income tax return. N.J.S.A. 54:4-3.80 specifically provides that a residential shareholder in a cooperative housing corporation is entitled to a homestead rebate which has as its objective the relief of residential homeowners from local property taxes. Where a husband and wife own a proprietary lease and one spouse dies, the surviving spouse is exempt from inheritance tax on the value of the decedent’s interest in the same manner as joint ownership of real estate. N.J.S.A. 54:34 — 1(f).
There was, during the years here involved, an active market in the purchase and sale of cooperative apartment proprietary *33 leases. Newspaper listings treated them in the same manner as condominiums.
In Baldwin Constr. Co. v. Essex Cty. Bd. of Taxation, 16 N.J. 329, 108 A.2d 598 (1954), the court stated:
By an amendment to the 1844 State Constitution adopted in 1875, Article IV, Section VII, paragraph 12, it was directed that property “be assessed for taxes under general laws, and by uniform rules, according to its true value." Accordingly, the implementing statutes embodied the standard of true value. L.1906, e. 120, R.S. 54:3-13; L.1918, c. 236, R.S. 54:4-1, 12, as later amended, 23, also amended; L.1934, c. 191, R.S. 54:3-17; L.1934, c. 191, R.S. 54:3-18; L.1918, c. 236, R.S. 54:4-36, 46, 47, 48.
But the 1947 Constitution, Article VIII, Section I, paragraph 1, provides that property shall be “assessed for taxation under general laws and by uniform rules,” and “All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value.” The cited enforcement statutes remain unaltered in terms. Yet the dominant principle of the new constitutional mandate is equality of treatment and burden. And this was of the essence and spirit of the old Constitution as well. One of the implementing statutory provisions cited supra, R.S. 54:3-13, enjoined the county board to “secure the taxation of all property ... at Its true value, in order that all (taxable) property ... shall bear its full, equal and just share of taxes.” The standard of value is but a means of achieving uniformity and equality. Such is the preeminent consideration in distribution of the tax burden. [16 N.J. at 339-340, 108 A.2d 598]
Bearing in mind the proscription that all property must be assessed at the same standard of value, we are faced with applying that principle to a cooperative apartment building. The municipality contends that the test is its “full and fair value ... at such price as [the property] would sell for at a fair and bona fide sale by private contract. . . . ” N.J.S.A. 54:4-23. Following this through and recognizing that once operational, a cooperative housing corporation’s real property is unlikely ever to be sold as a single unit, its position is that the full and fair value within the framework of the Constitution and taxing statutes should be determined by combining those values at which the component proprietary leases and stock do sell.
Taxpayer’s position is that such approach values the manner in which the real property is utilized rather than its market value and that a true gauge of its market value would be to compare it with a like structure in which the tenants pay rent to the owner, to determine the economic rent and then determine its value by the capitalization of income approach.
*34 As stated in New Brunswick v. N. J. Div. of Tax Appeals, 39 N.J. 537, 189 A.2d 702 (1963),
[T]he search, of course, is for the fair value of the property, the price a willing buyer would pay a willing seller. Consideration may be given to cost less depreciation and sales of comparable property. It may also be given to rental income.... There can be no rigid rule.... [39 N.J. at 543, 189 A.2d 702]
The parties recognize that the subject structure is unlikely ever to be sold as one unit. They also recognize that the combined values of the individual proprietary leases produce a value substantially in excess of the building’s market value as a noneooperative rental unit. This is particularly true in Fort Lee where there is a rent control ordinance. However, despite those obstacles, it is necessary to determine a taxable value so that it shall bear its full, equal and just share of taxes.
The Supreme Court has recognized the judicial ability of a court to determine the appropriate method of valuing real property. Hackensack Water Co. v. Old Tappan, 77 N.J. 208, 390 A.2d 122 (1978). In that case the court recognized the various standards of valuation but determined that they were “not compatible with the unique problems posed.... ” Id. 77 N.J. at 215, 390 A.2d 122. It chose an “original cost” method in rejecting the traditional methods as inappropriate to reservoir property. Id. 77 N.J. at 217, 390 A.2d 122. As to noncooperative apartment buildings, the courts have recognized that the capitalization of income approach predominates. Parkview Village Ass’n v. Collingswood, 62 N.J. 21, 297 A.2d 842 (1972); New Brunswick v. N. J. Div. of Tax Appeals, supra. The Appellate Division, in Anaconda Co. v. Perth Amboy, 157 N.J.Super. 42, 46, 384 A.2d 531 (App.Div.1978), judgment vacated in part and remanded on an unrelated issue 81 N.J. 55, 404 A.2d 1155 (1979), held that the only property appraisal approach for evaluating a copper refinery was the cost approach.
In Bret Harte Inn, Inc., v. City and County of San Francisco, 16 Cal.3d 14,127 Cal.Rptr. 154, 544 P.2d 1354, 1359 (Sup.Ct.1976), the court stated:
The recent cases have also distinguished between challenges to the result reached by the assessor after applying a sound valuation method and challenges to the validity of the method itself ... On the other hand, when the taxpayer *35 challenges the validity of the valuation method itself, the trial judge is faced with a question of law. [127 Cal.Rptr. at 159, 544 P.2d at 1359]
See, also, Dressler v. Alpine Cty., 64 Cal.App.3d 557, 134 Cal.Rptr. 554 (1976), and ITT World Communications, Inc., v. Santa Clara Cty., 101 Cal.App.3d 246, 162 Cal.Rptr. 186 (1980).
R. 4:46-2 requires that there be no material dispute over the facts in order for summary judgment to be granted. There is no dispute over those facts necessary to conclude a correct approach to the valuation of a cooperative apartment building.
While a court may determine that there is only one proper method, as was done in Anaconda, supra, where possible, the better approach is to choose a valuation method which can be checked for accuracy with another method or methods. New Brunswick v. N. J. Div. of Tax Appeals, supra.
In considering whether the subject property should be valued on an income basis it must be recognized that such approach is valid only when there are no true comparables and, as investor-owned rental property is usually bought and sold for investment income and appreciation, resort is made to a comparison on an investment-income basis. However, the subject property is not rental property owned for investment. It is not being used for investment income but, rather, as the residence of shareholders owning proprietary leases. Those owners were not purchasing their interest for income-producing purposes any more than the owner occupant of a single-family dwelling. To compute a value through the normal income approach would result in a value conclusion which would not be applicable to the property, for one can be certain that there would be no willing sellers at such value.
This same conclusion was reached in River House-Bronxville, Inc., v. Hoffman, 101 Misc.2d 422, 421 N.Y.S.2d 161 (Sup.Ct. 1979), remanded for additional hearings 79 App.Div.2d 990, 434 N.Y.S.2d 465 (1981). The court stated:
... As clearly established by the testimony of both expert appraisers in this case, it is clear that the River House is not income producing property. To adopt an income approach to valuing this building would require the Court to engage in pure speculation as to what its potential net income would be if the building *36 were something that it clearly is not, and according to the experts, probably never will be. [421 N.Y.S.2d at 163]
That the aforesaid statement is equally applicable to the subject property is buttressed by the tangible benefits realized by the owners of the proprietary leases as distinguished from tenants of investor-owned apartment houses. Also, it must be recognized that investor-owned apartments are subject to rent control, an aspect not present in the subject property.
Having concluded that the income method of valuation does not reflect market value, the only remaining question is to determine what weight should be given to the market sales of the various proprietary leases.
In Newark v. West Milford, 9 N.J. 295, 88 A.2d 211 (1952), the court, in determining the method to be used in valuing a large tract of land, stated as follows:
... The lands here in question cannot be sold by private contract, and because of the vast acreage involved there are few if any comparable holdings in the hands of private persons. So it follows that the assessment of these lands cannot be fixed with any degree of mathematical exactness but must be fixed by a reasonable and equable comparison with the true value of smaller comparable holdings of private persons. A reasonably approximate and comparable true value based upon the same principles of taxation applicable to these holdings of private persons will be a compliance with the statutory direction. [9 N.J. at 303, 88 A.2d 211]
Equally applicable would be the use of the market sales of the component parts of the subject property. While it is recognized that the form of that which is purchased and sold by the tenants of a cooperative apartment building is stock and a proprietary lease, the substance is the right to occupy, with maximum incidents of ownership, a specific apartment. In matters of taxation, substance must prevail over form.
The cooperative apartment sales prices may require adjustments. The underlying mortgage, either favorable or unfavorable, should be reviewed. Glenwood Realty v. East Orange, 78 N.J.Super. 67, 187 A.2d 602 (App.Div.1963). Personal items may also have been included in the sale.
The court, in 200 Country Club Associates v. Board of Assessors, 83 A.D.2d 637, 441 N.Y.S.2d 706 (App.Div.1981), *37 indicated that a market value predicated on combining the values attributable to the apartments could have a weakness in that if all shareholders put their shares on the market at one time, it would depress prices. This is no different than the possibility that if all homeowners in a particular block decided to sell at one time, the market prices could be depressed. Both are unlikely situations. Further, that court’s concern with the possibility that an investor, in order to earn a profit, would expect a discount if he purchased the property, is conjecture. We know that an investor who expects to earn a profit by renting out private residences would also have to purchase them at below market prices. This would not be a reason to reduce the taxable values of such residences.
Having concluded that the sale prices of the stock and proprietary leases are a predominant component in determining the subject property’s taxable value, it is then necessary to test that value to assure that it is fully attributable to the property and not the form of ownership. This should be done by ascertaining the replacement cost new as of the assessment dates. The Appraisal of Real Estate (7th Ed.), at 263-264, specifically states as follows:
Basic to the cost approach is the principle of substitution: no prudent person will pay more for a property than the amount for which he or she can obtain by purchase of a site and construction of a building without undue delay, a property of equal desirability and utility. Consequently, reproduction cost new, prior to any deduction for accrued depreciation, plus land value, tends to set the upper limit of value. Developer’s profit in a typical development also becomes part of cost new in the context of this statement.
See, also, Medical Bldg. Land Co. v. Dep’t of Revenue, 283 Or. 69, 582 P.2d 416, 422 (Sup.Ct.1978).
Since the correct method of valuing the subject property places predominant reliance on the sales of stock and proprietary leases applicable to each apartment unit, the original assessments are correct.
A judgment affirming the original assessments will be entered by the Clerk of the Tax Court. However, the judgment will not be entered for 30 days from the date hereof in order to *38 permit taxpayer’s counsel to advise the court as to whether he wishes to introduce evidence that the assessments exceeded reproduction cost new.