PARSIPPANY HILLS ASSOCIATES, PLAINTIFF, v. TOWNSHIP OF PARSIPPANY–TROY HILLS, DEFENDANT.

Tax Court of New Jersey

May 29, 1980.

*Michael H. Smoller* (*Mandelbaum & Mandelbaum*, attorneys) for plaintiff.

*Bertram J. Latzer* (*Pendleton & Latzer*, attorneys) for defendant.

EVERS, J. T. C.

The subject of these 1975 through 1978 complaints is a twelve year old garden apartment complex located on approximately 5 acres, situated at the intersection of Parsippany Road and Route 287. In the immediate area are located other apartment com-

plexes, one family dwellings, some limited commercial uses and industrial buildings. While the taxpayer was critical of the location and design of the apartments, it was admitted that these factors had no impact on the rentability of the units. The assessments, which were affirmed by the county board, for each year in question were $248,000 for the land and $1,152,000 for the improvements, for a total of $1,400,000.

The 5 two–story and basement buildings contain 124 units comprised of 24 two–room efficiencies, 17 two and one–half room units, 33 had three rooms and 26 contained four rooms. The buildings are of masonry and concrete construction with brick veneer exterior with the interior consisting of sheetrock walls and ceilings and hardwood floors. The kitchen has a refrigerator, range, single sink and tiled flooring. Each apartment has one wall-mounted air conditioner and has baseboard hot water oil–fired heat. There are 30 basement garages.

Plaintiff seeks a reduction on the basis of valuation and discrimination in assessments. It seeks the application of *N.J. S.A.* 54:1–35a with respect to its 1978 discrimination claim. A revaluation was effective for the 1971 tax year. During the period in question a rather restrictive rent control ordinance was in effect which permitted average increases from 1.6% to 2.2% annually. It was primarily because of the rent control influence, according to the taxpayer, that the property did not increase in value as did most other properties in the community, and it therefore bore a disproportionate share of the tax burden.

The respective expert witnesses were remarkably close in their opinions of value. Utilizing the comparable sales and capitalization of income approaches, the township found an average value of $1,534,125 while the taxpayer, relying solely on the income method, concluded its value to be $1,620,000. The Court, as did the experts, in its determination will place greater reliance on the capitalization of income approach for several reasons. In valuing income producing property it is an accepted fact that a prospective purchaser's primary concern is with the anticipated return on his investment and not with the cost of

construction or the price for which similar properties may be sold. It is recognized, however, that the comparable sales approach may be useful as an indicator of value provided the degree of comparability between the subject and sales properties is clearly established. No such comparability was established here where the four sales referred to by the township were located in Dover, Rockaway and Butler and where little or no testimony was offered with respect to the similarities. Lastly, it is to be noted that it can only be through the capitalization of income approach that the effect of rent control can be reflected.

In analyzing the respective income approaches it is initially noted that the difference in net income before interest, depreciation and real estate taxes was only $3,500. I accept the net income of $218,105 as testified to by the township as it reflects an average of the actual income and expenses of the property owners during the years in question. It also reflects a 2% vacancy factor which is supported by the testimony.

In their capitalization of income computations the witnesses differed in their interest and recapture rates. The taxpayer used an 8.5% interest rate which I find to be consistent with market conditions during this period. I further find the taxpayer's use of a 2.5% recapture rate which is based on a 40 year economic life to be fair and reasonable in light of the age and fair condition of the improvements. I also agree with the taxpayer's use of an average effective tax rate of 2.81% which is found by multiplying the Director's average ratios by the actual tax rates for a total capitalization rate of 13.81%.

Without separating the land and improvements and ascribing separate returns and taxes to each, the township applied an average overall capitalization rate of 14.147% to the averaged net income of $218,105 and thus found the average value of land and buildings for all years to be $1,543,125. A value of $310,000 was ascribed to the land on the basis of $2,500 per unit, which resulted in an improvement value of $1,233,125.

The township acknowledged that the existence of the restrictive rent controls depressed the value of the property. It

claimed however that this factor was taken into consideration in arriving at the final appraised value which calculates to approximately $12,500 per unit including land. However this per unit value can only find support by referring to the sales prices of the four alleged comparables which the Court has already found to be unreliable. The effects of rent control on values of Parsippany–Troy Hills properties cannot be established simply by deducting an arbitrary sum from the sales prices of properties located in other remote taxing districts.

In accepting the use of the effective tax rate in computing a capitalization rate, I find that property in Parsippany–Troy Hills was not assessed at 100% of true value. An analysis of the State Director's sales ratios studies for 1975, 1976 and 1977 clearly reveals the existence of a common level but a level well below 100% of true value. The study contained 1,644 useable sales which represents approximately 15% of all taxable properties in the township. The study reveals the ratios are clustered closely around the average ratios of 63.93%, 61.49% and 58.21% for these three years. The relative uniformity in assessments is highlighted by relatively low coefficients of deviation of 10.21, 10.85 and 10.72. The Supreme Court in *Tri–Terminal Corp. v. Boro. of Edgewater*, 68 *N.J.* 405, 413, 346 *A.2d* 396 (1975) noted that a coefficient under 20% was acceptable.

Although its testimony with regard to the value of the land was limited, I accept the taxpayer's estimate of $3,000 per unit for a total of $372,000 to reflect its value. This value is in excess of the original assessment as well as the township's estimate.

The true value of this property is therefore calculated as follows. From the net income of $218,105 is deducted a return to the land of $42,073 which is found by applying a capitalization rate of 11.31% (8.5% interest and 2.81% effective tax rate) leaving a net for improvements of $176,032. This sum is capitalized at 13.81% (8.5% interest, 2.81% effective tax rate and 2.5% recapture) which results in an improvement value of $1,274,670. By adding the land value of $372,000 the total value is $1,646,-670.

I further find the unweighted, unclassified arithmetic average of assessments to sales ratios represents a common level of assessments at 61.21% of true value which is the average of the 1975, 1976 and 1977 average ratios. The assessment of $1,400,000 is 85% of the true value of $1,646,670 and clearly proves the taxpayer's argument that rent control has limited the increase in value of the subject property when compared to other properties which are assessed at 61.21% of true value. Accordingly, the common level of 61.21% will be applied to bring the assessed value of the premises in question in line with the assessments of other properties in the township.

I further find that the application of the average ratio pursuant to *N.J.S.A.* 54:1–35a is warranted. An application of that statute utilizing the unweighted, unclassified arithmetic average of 59% as of October 1, 1977 is as follows.

| | |
|---|---|
| County percentage level | 100% |
| Average ratio 1978 | 59% |
| 15% common level range-upper limit | 67.85% |
| 15% common level range-lower limit | 50.15% |
| Subject property true value | $1,646,670 |
| Assessment | $1,400,000 |
| Ratio assessment | 85% |

In light of the fact that the ratio of assessment to true value of 85% exceeds the upper limit, the 59% average ratio will be applied.

Judgment will be entered as follows.

| | 1975, 1976, 1977 | 1978 |
|---|---|---|
| Land | $ 227,700 | $ 219,480 |
| Improvements | 780,225 | 752,055 |
| Total | $1,007,925 | $ 971,535 |