182 N.J. Super. 409 (1982)
442 A.2d 611
G.D. MANAGEMENT COMPANY, AGENT FOR ROBERT K. RAYNOR AND VIVIAN R. RAYNOR, PLAINTIFF-APPELLANT,
v.
REGINA NEGRI AND MAUREEN CAVALLUZZI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1981.
Decided January 13, 1982.
*410 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Jerrold R. McDowell argued the cause for appellant (Winne, Banta, Rizzi & Harrington, attorneys; Bruce F. Banta of counsel).
William Goldberg argued the cause for respondents.
The opinion of the court was delivered by PRESSLER, J.A.D.
This appeal raises a novel issue of landlord-tenant law in the context of a condominium conversion. The question before us is *411 whether the rights accorded a tenant by a municipal rent-leveling ordinance are abrogated by reason of the conversion and sale to another of the unit he occupied prior to the conversion and continues to occupy thereafter.
The tenants here, defendants Regina Negri and Maureen Cavalluzzi, entered into a one-year lease with BH Associates on February 2, 1979, of an apartment in a high-rise building in Hackensack, New Jersey, for a reserved monthly rent of $580. During that year the building was converted to condominium ownership pursuant to N.J.S.A. 46:8B-1 et seq. There is nothing in the record to suggest to the contrary, and we therefore assume that the tenants were offered an opportunity to purchase their apartment as required by N.J.S.A. 2A:18-61.8 and chose to reject the offer. Subsequently, on October 4, 1979, the condominium unit was purchased by Robert K. Raynor and Vivian R. Raynor, who retained plaintiff G.D. Management Company to manage the unit for them. The Raynors own one other condominium unit in Hackensack but in a different building.
Shortly after expiration of the original one-year lease, plaintiff advised defendants that they had an option either to quit the premises at the end of the ensuing month or to remain in possession at an increased rental of $650. It was stipulated that while that rent was in excess of that which would have been permitted by the Hackensack rent leveling ordinance, it was nonetheless not unconscionable. Defendants refused to quit and refused as well to pay the rent increase. Plaintiff, therefore, brought a summary dispossess action against them in the county district court where the issue, as posed and tried, was whether plaintiff was bound by the terms of the rent-leveling ordinance. The judge concluded that it was, and we agree.
At the outset we note that the Hackensack rent-leveling ordinance does not purport to address the factual situation of a condominium conversion in which the preconversion tenant remains in occupancy after the sale of his unit. As applied to this *412 situation, moreover, the ordinance is textually ambiguous and hence not eminently helpful in resolving the problem. Thus, the ordinance is expressly applicable, with stated exceptions not here relevant, to "any building or structure rented or offered for rent to three (3) or more tenants or family units for residential purposes." Whether this definition incorporates the qualification of undivided ownership of the building is an arguable proposition. Furthermore, anomalies are unavoidable, whether the definitional emphasis is placed on the nature of the physical structure or the nature of its ownership. If placed on ownership, then the possibility exists that every occupant of a high-rise apartment building would be a tenant of a different individual condominium-unit owner and that none of the tenants, whether or not their tenancies antedated the conversion, would be afforded the rent-leveling protection available to tenants of those other similar apartment buildings in the municipality which continue in undivided ownership. If emphasis is placed on the definitional standard of a building rented to three or more family units, then, as condominium units become owner-occupied, the last two tenants remaining would suddenly have lost their pre-existing protection.
We are accordingly satisfied, because of the artificially disparate and illogical results which would obtain under either construction of the ordinance, that the sounder and more rational approach is to regard the ordinance as silent in respect of the condominium-conversion problem and to search elsewhere for guidance as to its applicability in that context.
In that endeavor we are persuaded that there have been sufficiently clear statements of legislative policy to dictate the result here. It is first plain that enactment of the Horizontal Property Act, N.J.S.A. 46:8A-1 et seq., governing cooperatives, and the Condominium Act, N.J.S.A. 46:8B-1, inevitably impacted upon the rights and status of tenants of units which were converted to these forms of ownership. The legislative response *413 was its enactment of L. 1975, c. 311 which, among its other purposes, was to accord substantial protections to such tenants.[1]
The basic scheme of L. 1975, c. 311, was to distinguish between those tenants whose occupancy had commenced prior to the conversion and those whose occupancy had commenced thereafter and, in effect, to preserve intact for the pre-existing tenants all of their original tenancy rights for a minimum three-year period. Thus, pursuant to N.J.S.A. 2A:18-61.8, a tenant in occupancy at the time of the conversion is given the exclusive right for a 90-day period to purchase the unit. If he does not purchase, then his tenancy nevertheless continues subject to the owner's right to demand redelivery of the premises on a three-year's written notice. N.J.S.A. 2A:18-61.1(k), 61.1(g). If such notice is given, the tenant is further accorded a right to moving expenses in the form of the landlord's waiver of one month's rent, and upon the tenant's request, to an offer by the landlord of comparable alternative housing. N.J.S.A. 2A:18-61.10 and 61.11, respectively. The comparable-housing requirement, moreover, specifically provides that "The court shall authorize 1-year stays of eviction with reasonable rent increases until such time as the court is satisfied that the tenant has been offered comparable housing...." A maximum of five such stays is authorized. N.J.S.A. 2A:18-61.11. And see, generally, Plaza Joint Venture v. Atlantic City, 174 N.J. Super. 231 (App.Div. 1980); Hampshire House Sponsor Corp. v. Fort Lee, 172 N.J. Super. 426 (Law Div. 1979).
*414 Clearly, the primary impact of L. 1975, c. 311, was to bring tenancies which preexisted the conversion under the full protection of the Anti-Eviction Law, N.J.S.A. 2A:18-61.1 et seq. See, e.g., Fishman v. Pollack, 165 N.J. Super. 235 (Law Div. 1979). Particularly in view of the reference in N.J.S.A. 2A:18-61.11 to "reasonable rent increases," and considering the underlying policy of that legislation, we are persuaded that it was also the legislative intent to assure that preexisting tenancies would continue for the period of their future duration with no less protection to the tenant than he enjoyed prior to the conversion. The entire legislative scheme of permitting the tenant to remain in occupancy despite the conversion for the maximum statutorily authorized period would, in our view, be subject to unilateral abrogation by landlords if they were permitted to deprive the tenant during that period of any of his preexisting tenancy protections, including the benefit of any applicable rent-leveling ordinance. We are thus satisfied that the legislative intention was effectively to categorize pre-existing tenants during the continued term of their tenancy within the same classification as tenants of buildings not converted to condominium or cooperative ownership, thereby protecting such preexisting tenants, while in occupancy, from any adverse impact resultant from the conversion. Implementation of this intention would clearly require that any local rent-leveling ordinance would continue to apply to such pre-existing tenancies.
We further note that N.J.S.A. 2A:18-61.12 authorizes the Department of Community Affairs to adopt rules and regulations in respect of the impact on tenants of conversions. N.J.A.C. 5:24-1.12(c), adopted effective September 10, 1981, as a standard of fair dealing between owners and tenants in the conversion situation, provides that
No owner of a building or of a unit or of a proprietary lease to a unit shall impose an unreasonable rent increase on a tenant lawfully occupying any unit. An increase shall be presumed to be unreasonable if it is in excess of the increase that would be allowed under any municipal rent control ordinance applicable to the building immediately prior to conversion or if it reflects increased costs attributable directly or indirectly to the conversion which do not add services or *415 amenities not previously provided. For the purposes of (c) of this section, repairs required by applicable codes shall not be deemed to be amenities.
Plaintiff argues that the regulation, which essentially limits the rent increase by a converted unit owner to that permissible by the local rent-leveling ordinance, if any, should not be retroactively applied to the tenancy here in question. We do not regard the regulation as raising a retroactivity issue, however, since we are satisfied that as to tenancies pre-existing the conversion, the regulation is merely declarative of the original legislative intent. Hence, it is the legislative complex rather than the corroborative administrative regulation which compels the result here.
Affirmed.
NOTES
[1] The sponsor's statement to Assembly Bill 3570, enacted as L. 1975, c. 311, stated that "This bill details further grounds for evicting tenants and the notice provisions required. It also concerns tenants' rights in the conversion of a multiple dwelling into a condominium or cooperative. The Governor's statement upon signing the bill included the sponsor's observation that such conversions were becoming more frequent and, if unregulated, "could cause serious hardship to tenants."

The provisions of L. 1975, c. 311, relevant to conversions were enacted as N.J.S.A. 2A:18-61.1(k) and (1), 2A:18-61.2(f) and (g), and 2A:18-61.6 to 2A:18-61.12, inclusive.