185 N.J. Super. 403 (1982)
449 A.2d 23
B.H. ASSOCIATES, PLAINTIFF,
v.
IRVING BRUDNER AND IRENE BRUDNER, DEFENDANTS.
Superior Court of New Jersey, District Court Bergen County.
April 26, 1982.
*404 Jerrold R. McDowell, for plaintiff.
Irving Brudner and Irene Brudner, pro se.
deCORDOVA, P.J.D.C.
This summary dispossess action raises the novel issue of whether a municipal property tax increase which results from the conversion of a rental property to a condominium may be passed along to a tenant who remains in possession after the conversion pursuant to N.J.S.A. 2A:18-61.2(g), (or any other statutory provision which protects tenancies which pre-exist the conversion).
The facts, as stipulated and as proven at trial, may be summarized.
Defendants entered into a written lease with Baridge Associates to rent an apartment for a term of one year at 307 Prospect Avenue, Hackensack, New Jersey. They continued their tenancy after the expiration of the lease on a month-to-month basis.
Plaintiff, successor to Baridge Associates converted the building known as Baridge House from a rental property to a condominium. N.J.S.A. 46:8B-1 et seq. Defendants having refused to exercise their option to purchase the unit which they occupy (N.J.S.A. 2A:18-61.8), have remained in their apartment, protected by the three-year notice provision of N.J.S.A. 2A:18-61.2(g).
Subsequent to the conversion the building suffered a municipal property tax increase of approximately 270%. Plaintiff has charged the defendants with their proportional share of its tax increase, raising defendants' tax surcharge from $757.67 to $2,043.70.
Defendants have refused to pay the increased surcharge and plaintiff, therefore, has brought this summary dispossess action, alleging nonpayment of rent. N.J.S.A. 2A:18-61.1(a).
*405 Plaintiff argues that the Hackensack rent control ordinance (Code of the City of Hackensack, hereinafter Code, § 134) does not apply to rental units within a converted building and, therefore, the tenant may prevail only by showing that the increase is unconscionable. Edgemere at Somerset v. Johnson, 143 N.J. Super. 222 (Cty.Ct. 1976).
This argument is clearly without merit inasmuch as the Appellate Division has recently held that the Hackensack rent control ordinance does, in fact, apply to rental units within condominium buildings. G.D. Management Co. v. Negri, 182 N.J. Super. 409 (App.Div. 1982).
Alternatively, plaintiff argues that the increased tax surcharge is expressly permitted by the Hackensack rent control ordinance. Code § 134-6. The Code provides that:
No landlord may request or receive a percentage increase in rent which is greater than 50% of the percentage difference between the consumer price index 90 days prior to the expiration or termination or anniversary of the lease and the consumer price index 90 days prior to the date of the lease term commenced or, in the case of multi-year leases the last prior annual anniversary [§ 134-3(a)]
The Code further provides that if the landlord incurs extraordinary operating expenses, he may apply for hardship relief to the Rent Stabilization Board. Code § 134-3(e)(1).
Code § 134-6 provides for tax surcharges against the tenant, in favor of the landlord in the event of an increase in municipal property taxes. This surcharge may be collected by the landlord without having to resort to the Rent Stabilization Board.
The issue, therefore, is whether this type of tax increase, i.e., one which results from the conversion of the building to a cooperative or condominium, may be passed along to a tenant who remains in occupancy pursuant to any of the various statutory protections provided by the Legislature.
For the reasons advanced hereinafter, it is the opinion of this court that such a tax increase may not be passed along to a tenant, notwithstanding the provisions of a local rent leveling *406 ordinance which may expressly or implicitly permit such a tax pass-through.[1]
While the issue presented in this case is novel, the court looks for guidance to the case of G.D. Management Co. v. Negri, 182 N.J. Super. 409 (App.Div. 1982), and to the various New Jersey statutes which govern those tenancies which pre-exist condominium or cooperative conversion, (See N.J.S.A. 2A:18-61.1, -61.2(g), -61.11, -61.22  .39, in determining the policy adopted by our courts and Legislature.
In the G.D. Management Co. case the Appellate Division held that the Hackensack rent control ordinance protects tenants occupying condominium units pursuant to N.J.S.A. 2A:18-61.2(g). The basis for that decision was a finding that the Legislature, in enacting the statute (L. 1975, c. 311), intended to "bring tenancies which pre-existed the conversion under the full protection of the Anti Eviction Law. N.J.S.A. 2A:18-61.1 et seq." G.D. Management Co. v. Negri, supra at 414.
N.J.S.A. 2A:18-61.1(k) provides that a tenant may be removed where the landlord is converting the building from the rental market to a condominium or cooperative. N.J.S.A. 2A:18-61.2(g) provides that where a tenant is being removed because the building is being converted to a condominium or cooperative, the tenant is entitled to three years' notice prior to institution of a summary dispossess action. Further, under our statutory scheme, the tenant must be afforded reasonable opportunity to examine comparable housing. N.J.S.A. 2A:18-61.11. The Legislature has also provided that the courts may grant up to five consecutive one-year stays of eviction in an effort to afford the *407 tenants the opportunity to find comparable housing. Id. In lieu of having more than one such one-year stay of eviction imposed upon him, a landlord may waive the payment of five months rent by the tenant as a hardship relocation compensation. Id.
In an effort to assure that all the other protections of N.J.S.A. 2A:18-61.1 are afforded to a tenant exercising his rights under N.J.S.A. 2A:18-61.2(g) and 61.11, the Legislature has provided that a landlord may only charge reasonable rent increases during the tenant's protected tenancy. N.J.S.A. 2A:18-61.11.
Recently, the Legislature has enacted the Senior Citizens and Disabled Protected Tenancy Act, L. 1981, c. 226.[2] That statute protects the tenancies of eligible senior citizens and disabled persons for up to 40 years. The act provides that if the protected tenancy arises in a municipality in which a rent control ordinance is in effect, the tenant may be charged with no rent increase in excess of that permitted by the local rent control ordinance. Further, if the protected tenancy arises in a municipality which does not have a rent control ordinance in effect, only a reasonable rent increase will be permitted.
In determining the reasonable rental, or in determining a fair rental before a municipal rent control board hardship hearing,
No ... increased costs which are solely the result of the conversion, including but not limited to any increase in financing or carrying costs, and which do not add services or amenities not previously provided shall be used as a basis to establish the reasonableness of a rent increase.... [L. 1981, c. 226, § 10]
It is clear, therefore, that were defendants, in this action, protected in their tenancy for 40 years under L. 1981, c. 226, the tax surcharge sought by plaintiff would not only be impermissible under § 134-6 of the Hackensack Code, it would not even be admissible in a hardship hearing before the Hackensack Rent Stabilization Board. This court does not believe that the Legislature intended any less protection during an extended tenancy under N.J.S.A. 2A:18-61.2(g) or 2A:18-61.11 than is afforded under the extended tenancy provided by L. 1981, c. 226.
*408 Subsequent to the passage of L. 1981, c. 226, the New Jersey Department of Community Affairs promulgated a regulation prohibiting any rent increase which "reflects increased costs attributable directly or indirectly to the conversion which do not add services or amenities not previously provided." N.J.A.C. 5:24-1.12(c), eff. Sept. 10, 1981. This regulation applies to all tenancies which are extended beyond condominium or cooperative conversion. N.J.A.C. 5:24-1.1 et seq.
Judge Pressler gave the regulation retroactive effect on the ground that it "is merely declarative of the original legislative intent." G.D. Management Co. v. Negri, supra at 415.[3] Judge Pressler, writing for the Appellate Division in that case, said that it was
... the legislative intent to assure that preexisting tenancies would continue for the period of their future duration with no less protection to the tenant than he enjoyed prior to the conversion. .. . We are thus satisfied that the legislative intention was effectively to categorize preexisting tenants during the continued term of their tenancy within the same classification as tenants of buildings not converted to condominiums or co-operative ownership, thereby protecting such preexisting tenants, while in occupancy, from any adverse impact resulting from the conversion. [182 N.J. Super. at 414, emphasis supplied]
Clearly, a 270% municipal property tax increase after the conversion is an adverse impact resulting from the conversion. It is not an ordinary tax increase caused by improvement of the physical plant, nor is it an ordinary operating expense, which should rightfully be borne by the tenant. It is an extraordinary expense incurred by the owner, by virtue of an investment decision made by him. It is, in every sense, an "increased [cost] solely the result of the conversion, ... which [does] not add services or amenities not previously provided." L. 1981, c. 226, § 10; N.J.A.C. 5:24-1.12(c). The tax increase, therefore, is most properly borne by the owner or investors of the condominium.
*409 The owner or investor is in a far superior position to absorb the tax increase, as it will be calculated into the value of the investment. The Condominium Association will adjust the purchase price of the units to reflect the added unmarketability of a unit encumbered by a protected tenancy and an added tax burden.
The purchaser of a unit occupied by a protected tenant will take into account the tax bill in determining whether to invest and the amount to be invested in such a unit  as would the purchaser of an unoccupied unit who would have to pay the new tax bill.
The tenant, having had no voice in the decision to convert, and his tenancy protected by the laws of the State of New Jersey, must not be forced to bear the expense incurred as a result of the decision to convert the property, which decision in no way enhanced the value of his tenancy.
In holding that the tax increase generated by the conversion may not be passed on to the tenant, the court is following the mandates of the Legislature, the Appellate Division and the Department of Community Affairs in maintaining the tenant's status quo, i.e. continuing the tenancy uneffected by the conversion from the rental market.
To hold otherwise would abrogate and make meaningless the protections afforded by our Legislature, and would violate the stated policy to protect pre-existing tenancies from "any adverse impact resulting from the conversion." G.D. Management Co. v. Negri, supra, 182 N.J. Super. at 414.

II
Also at issue in this case are two consecutive rent increases charged by plaintiff against the defendant, which to the date of trial, the defendant has refused to pay.
The first increase was by notice dated June 27, 1980 and effective August 1, 1980, raised the rent from $464. per month to $490. per month, an increase of 5.6%.
*410 The second notice to quit with proposed rent increase was served on defendant on July 29, 1981, to take effect September 1, 1981. This raised the rent from $490. per month to $512. per month (plus the tax surcharge which has been disallowed by this court, see Part I of this opinion), an increase of less than 4.5%.
The court finds these increases to be proper under the Code § 134-3(a), infra at p. 405, for reasons stated in its oral opinion delivered on the return date of plaintiff's motion to amend the judgment.[4]
In light of the fact that defendant has refused to pay either of these allowable rent increases, a judgment for possession will be entered with arrearages in the amount of $434., calculated as follows:

 Rent Paid Arrears
Aug. 1, 1980 - Aug. 31, 1981 $490./mo. $464./mo. x 13 $338.
Sept. 1, 1981 - Oct. 31, 1981 $512./mo. $464./mo. x 2 96.
 _____
 $434.

Because of the unique nature of this case and the amount of arrearages, the court will suspend the operation of the judgment for possession for a period of thirty (30) days.
NOTES
[1] It can be noted that the court does not believe that the governing body of the City of Hackensack intended § 134-6 to sanction this type of tax surcharge without application for hardship relief. Rather, it seems clear that § 134-6 was a time-saving mechanism, sparing the Rent Stabilization Board from having to consider applications based on small, routine tax increases, which applications would probably come from all landlords, on all units simultaneously.
[2] Amended by L. 1981, c. 455.
[3] Administrative regulations which are duly promulgated under properly delegated authority have the force and effect of law. Cox v. Bond Transportation, Inc., 53 N.J. 186 (1969); State by VanRiper v. Atlantic City Electric Co., 23 N.J. 259 (1957).
[4] On motion returnable May 28, 1982, the court granted plaintiff's motion to amend the judgment for reasons stated in its oral opinion. The result of that amendment, however, is accurately reported here.