196 N.J. Super. 456 (1984)
483 A.2d 239
DONALD LITT, PLAINTIFF,
v.
RUTHERFORD RENT BOARD AND JOHN PETTI, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided July 12, 1984.
*458 Harvey R. Pearlman for plaintiff (Friedman, Kates, Pearlman & Fitzgerald, attorneys).
Thomas H. Sullivan for defendant Rutherford Rent Bd. (Smith, Ely, Smorodsky & Sullivan, attorneys).
Louis L. D'Arminio for defendant John Petti (Breslin, Herten & LePore, attorneys).
EVERS, J.T.C. (temporarily assigned).
In this in lieu of prerogative writ matter plaintiff, as a representative of a class of shareholders (landlord) in a cooperative apartment complex known as Hastings Village, Inc. (Hastings), seeks to reverse a decision of the defendant Borough of Rutherford Rent Board (Board) by which landlord's attempt to pass through a tax surcharge to defendant (tenant), a representative of a class of tenants in Hastings, all of whom occupied such status prior to its conversion to a cooperative form of ownership, was denied. Involved are questions of substantive and procedural due process and interpretation of the pertinent sections of the Rutherford Rent Control Ordinance and N.J.S.A. 2A:18-61.22 et seq. (Senior Citizen and Disabled Protected Tenancy Act). There being no dispute as to any material fact the parties brought cross motions for summary judgment. See *459 Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1954).[1]
Following the conversion of Hastings from a rental apartment complex to a cooperative, the 1983 real estate taxes were increased from $122,289.81 based on the 1982 assessment, to $292,590.42. A reduction was granted by the Bergen County Board of Taxation following an appeal by the taxpayer, with the result that the net increase was $9.38 per room per month. Landlord notified tenant that his rent would be increased accordingly. At its meeting of August 11, 1983 the board approved the tax surcharge "pass-through" in its entirety. However at a meeting on September 15, 1983 the board determined to reopen and rehear the matter. This determination was apparently made in response to a letter from the president of the governing body who requested such action because of a conflict on the part of a board member and further because of certain statements made by the tax assessor before the mayor and council, which indicated that the tax increase was caused by the conversion from a rental complex to a cooperative. Copies of the tax assessor's statements were furnished to the Board by the councilman. Additionally the Board decided on that course of action because the then recent Supreme Court decision in AMN, Inc. of New Jersey v. South Brunswick Rent Leveling Bd., 93 N.J. 518 (1983) had been brought to its attention. Thereafter, at a meeting on September 29, 1983, in which counsel for landlord participated but at which the assessor did not testify, the Board, concluding that the portion of the tax increase resulting from the conversion could not be "passed through" to preconversion tenants, allowed only that portion of *460 the increase attributable to a normal increase in the tax rate (the 1982 preconversion assessment multiplied by the increased 1983 tax rate).[2]
Landlord contends that the decision of the Board to reopen the matter was wrong because it was not based on valid reasons; that consideration of the assessor's statements made at a council meeting was improper and a denial of due process to landlord; that the rent control ordinance (§ 83A-7A) specifically allows the tax surcharge "pass-through" and that N.J.S.A. 2A:18-61.31 does not prohibit it; and denial of the surcharge is to deny to him a reasonable return and would be confiscatory in violation of his substantive constitutional due process rights.
Additionally, landlord claims that a decision of the Board, pursuant to § 83A-5K of the rent control ordinance, can only be taken by an appeal to court. While this argument was not pursued it must be stated that I find no authority that would prohibit the Board, on its own motion, from reopening such matters. I construe § 83A-5K, which does provide for an appeal to the courts from an adverse decision, to apply to those parties affected by the decision. Such was the course chosen by this plaintiff.
The question concerning the propriety of considering the assessor's statements made at the council meeting is moot. At the court's direction the assessor testified at the Board hearing on remand, at which time he was cross-examined by landlord's counsel. Although landlord complains that the court's order, which precluded the assessor from testifying and being cross-examined concerning his value conclusion and the method of valuation employed in arriving at such conclusion, was too restrictive, I perceive no prejudice to landlord or any violation of his right to cross-examine the witness. The function of the *461 Board is to determine whether the increased taxes could be passed through to the tenants. Whether the assessment was proper and whether the assessor employed a market data, replacement cost or income approach or any combination thereof, can play no part in that decision making process. Ample opportunity was presented to the parties to examine the assessor concerning those matters when the assessment was appealed to the County Board. I further note that the record of this hearing fully supports the Board's conclusion that the portion of the tax increase under review was solely the result of the conversion. I further conclude that the conversion did not provide the tenants with any services or amenities which were not previously provided.
As to landlord's claim that the decision to reopen was based on invalid reasons, it is clear that the Board's decision to disallow the pass-through was founded on its understanding that a tax increase resulting from a conversion could not be surcharged to tenants who occupied the premises prior to the conversion. Whether the decision to reopen was prompted by Justice Garibaldi's opinion in AMN, a case which landlord contends dealt with an entirely different issue and which afforded no reason for the Board to rehear the matter, is immaterial. If the final decision is legally correct and is supported by the facts in the record below it will be sustained. It has been held that administrative agencies such as this Board are created for the purpose of applying expertise in the areas which they are entrusted to administer. The agencies are not intended to operate in a vacuum and are, in fact, encouraged to make determinations in light of the full knowledge and information available to them. See In re Shore Hills Water Co., 101 N.J. Super. 214 (App.Div. 1968). Thus when, subsequent to a determination made by it, an administrative agency becomes aware of factors not within its knowledge or considered by it at the time of its initial determination which indicate that there may have been error therein, not only is the agency permitted *462 to, but in fact, is mandated by principles of fairness to reopen and reconsider the matter.
Landlord claims that this tax increase pass-through is expressly permitted by § 83A-7A of the rent control ordinance, which provides:
At the expiration or termination of a lease or month to month tenancy, the landlord may seek a tax surcharge from the tenant because of an increase in municipal property taxes. The tax surcharge shall not exceed that amount authorized by the following provisions. The landlord shall divide the increase in the present property tax over the property tax of the base year 1973 by the number of rented rooms in the multiple dwelling to obtain the tax increase per room. The tenant shall not be liable for a tax surcharge exceeding the tax increase per room multiplied by the number of rooms occupied by the tenant.
A literal application of that provision, without more, supports landlord's argument. However, where a rental complex is converted to a condominium or cooperative, the provisions of N.J.S.A. 2A:18-61.31 must also be considered. They provide, in pertinent part:
In a municipality which has a rent control ordinance in effect, a rent increase for a tenant with a protected tenancy status or for any tenant to whom notice of termination pursuant to section 3g of P.L. 1974, c. 49 (C 2A:18-61.2) has been given, shall not exceed the increase authorized by the ordinance for rent controlled units. Increased costs which are solely the result of a conversion, including but not limited to any increase in financing or carrying costs, and which do not add services or amenities not previously provided shall not be used as a basis for an increase in a fair return or hardship hearing before a municipal rent board or on any appeal from such determination.
Reasoning that the statutory prohibition relates only to the use of conversion costs as the basis of a rent increase in a fair return or hardship hearing, neither of which were sought by this landlord, landlord contends that the statute contains no prohibition against a tax pass-through which is permissible under the ordinance. Simply put, it is his position that a conversion caused tax increase is not a cost of conversion or, at least, is not the type of cost which the statute proscribes passing on to a protected tenant. According to landlord the prohibition of N.J.S.A. 2A:18-61.31 is concerned with increased costs caused basically by financing the purchase of the unit in question, such costs being for the benefit of the apartment *463 owner to enable him to acquire ownership of the unit. Because of that fact, it would be unfair to require the protected tenant to help pay such costs.
This issue was presented to the court in B.H. Associates v. Brudner, 185 N.J. Super. 403 (Dist.Ct. 1982), in a summary dispossess action where Judge deCordova held that a tax increase which results from the conversion of a building to a cooperative or condominium may not be passed along to a tenant who has protected status under N.J.S.A. 2A:18-61.1 et seq., notwithstanding the provisions of a local rent leveling ordinance which may expressly permit such a tax pass-through. In so holding, the court relied on G.D. Management Co. v. Negri, 182 N.J. Super. 409 (App.Div. 1982), which held that preconversion tenants in a building converted to a condominium in a municipality that has a rent control ordinance continued to be protected by the rent control ordinance during the term of their protected status, and their rent could not be increased above the amount allowed by the municipal rent control ordinance in effect.
Landlord criticizes Brudner on two grounds. He first claims that it has no precedential value, because matters determined in a summary dispossess action are not even res judicata in a subsequent action between the landlord and tenant concerning the same subject matter. Levine v. Seidel, 128 N.J. Super. 225 (App.Div. 1974). Second, he claims there was no support for the judge's conclusion that increased taxes should be treated as costs of conversion. With regard to the first point, while this court may not be bound by a District Court decision, I know of no prohibition which would prevent agreement with and adoption of the reasoning therein.
As to landlord's second argument, as previously noted, Judge deCordova relied on the opinion in G.D. Management and what he perceived to be the legislative intent in adopting not only the Protected Tenancy Act but the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 et seq. After noting the protection afforded to *464 preconversion tenants (three year notice requirement prior to institution of a dispossess action, N.J.S.A. 2A:18-61.2(g); a reasonable opportunity to examine comparable housing to be offered by the landlord, N.J.S.A. 2A:18-61.11; the possibility of obtaining five consecutive one-year stays  in addition to the three year notice, in an effort to afford the tenants the opportunity to find comparable housing, Id.) the court determined that any increases to a protected tenant are limited to reasonable or rent controlled increases. N.J.S.A. 2A:18-61.31.
Concerning such increases the judge reasoned that the inordinate tax increase resulting from the conversion was a cost of same; that it resulted from an investment decision made by the converter; that the value of the tenancy was not increased by the decision to convert; and concluded that the owner is in a better position to absorb the increase as it can be calculated into the value of the investment.
I agree with the philosophy enunciated in Brudner, which I find gives full expression to the intent of the Legislature as stated in G.D. Management:
Clearly, the primary impact of L. 1975, c. 311, [Anti-Eviction Act] was to bring tenancies which pre-existed the conversion under the full protection of the Anti-Eviction Law, N.J.S.A. 2A:18-61.1 et seq. See, e.g., Fishman v. Pollack, 165 N.J. Super. 235 (Law Div. 1979). Particularly in view of the reference in N.J.S.A. 2A:18-61.11 to "reasonable rent increases," and considering the underlying policy of that legislation, we are persuaded that it was also the legislative intent to assure that preexisting tenancies would continue for the period of their future duration with no less protection to the tenant than he enjoyed prior to the conversion. The entire legislative scheme of permitting the tenant to remain in occupancy despite the conversion for the maximum statutorily authorized period would, in our view, be subject to unilateral abrogation by landlords if they were permitted to deprive the tenant during that period of any of his preexisting tenancy protections, including the benefit of any applicable rent-leveling ordinance. We are thus satisfied that the legislative intention was effectively to categorize preexisting tenants during the continued term of their tenancy within the same classification as tenants of buildings not converted to condominium or cooperative ownership, thereby protecting such preexisting tenants, while in occupancy, from any adverse impact resultant from the conversion. Implementation of this intention would clearly require that any local rent-leveling ordinance would continue to apply to such preexisting tenancies. [Id. 182 N.J. at 414].
*465 G.D. Management however did not address the question of whether tax increases resulting from a conversion were included in the prohibition against increasing rents as a result of the cost incurred in converting. With the exception of Brudner the court has found no other case, nor has any been cited to me, which stands for the proposition that conversion costs include conversion tax increases. While Brudner may have expanded on Judge Pressler's decision, I believe it is a logical extension thereof.
In adopting the Protected Tenancy Act in 1981 the Legislature found that:
... the forced eviction and relocation of elderly persons from their established homes and communities harm the mental and physical health of these senior citizens, ... and increase the costs borne by all State citizens in providing for their public health, safety and welfare. These conditions are ... of increasing concern where rental housing is converted into condominiums or cooperatives.... The Legislature, therefore, declares that it is in the public interest of the State to avoid the forced eviction and relocation of senior citizen tenants wherever possible, specifically in those instances .. . where the eviction action is the result not of any failure of the senior citizen tenant to abide by the terms of a lease or rental agreement, but of the owner's decision advantageously to dispose of residential property through the device of conversion to a condominium or cooperative.
The Legislature further declares that ... qualified senior citizen tenants and disabled tenants be accorded a period of protected tenancy, during which they shall be entitled to the fair enjoyment of the dwelling unit within the converted residential structure, to continue for such time, up to 40 years....
The Legislature further finds that the promotion of this public interest is possible only if senior citizen tenants and disabled tenants are protected during this period from alterations in the terms of the tenancy or rent increases which are the result solely of an owner's decision to convert. N.J.S.A. 2A:18-61.23.
While the protected period provided in the Anti-Eviction Act may be only from three to eight years, the purpose of both acts is the same. This is made clear by noting that the coverage in N.J.S.A. 2A:18-61.31 extends beyond senior citizen and disabled tenants. It is applicable to all tenants regardless of whether they are over 62 years of age or disabled, if they have received a three-year eviction notice (a notice of termination pursuant to section 3(g). N.J.S.A. 2A:18-61.2). Additionally N.J. Admin. Code title 5, § 24-2.8 (1980) provides:

*466 The protection provided by section 10 of the Act to tenants in municipalities with rent control ordinances in effect shall apply to all protected tenants, and to all tenants, regardless of age, condition, length of residence or income, to whom notice of termination pursuant to section 3(g) of P.L. 1974 c. 49 (N.J.S.A. 2A:18-61.2) has been given.
Clearly the Legislature went to great lengths to insure that all tenants who enjoyed such status prior to conversion would not have their tenancies terminated (except for the stated exceptions) or altered because of conversion. I conclude that a pass-through to protected tenants of a tax increase resulting from a conversion would defeat that purpose. That conclusion finds support in the facts of this case.
As of the conversion date Section 83A-2(b) of the rent control ordinance limited rent increases to 4% annually. Additional rent increases could be granted for capital expenditures and extreme hardship, but as previously noted any applications for an increase could not be based on costs incurred as a result of conversion. Thus the rent increases of a three room unit renting for $250 per month or $3,000 annually would be $10 per month or $120 annually.[3] If the tax increase were passed through, the same tenant's tax payments would increase by $28.14 per month or $337.68 per year, a sum more than three times greater than the allowable rent increase.[4] It is very possible, if not highly probable, that the total tax increase would exceed the cost of conversion which cannot be borne by the preconversion tenants. Clearly, to limit rent increases to 4% and to prohibit any rent increase application based on conversion costs on the one hand and to pass through a tax increase far in excess of the allowable rent increase caused by the conversion on the other, defies logic and common sense and flies in the face of the Legislature's intent to, following a *467 conversion, preserve the status quo of preconversion tenants. Therefore, although the word tax may not be included as a cost in the language of the statute, to exclude it as a cost would defeat the very purpose of the legislation. No weight is to be accorded to the Legislature's choice of words where the legislative intent is clear. Furthermore, while the rent control ordinance does permit the pass-through of a normal tax increase resulting from increased tax rates, to allow the pass-through of a conversion caused 140% tax increase is totally inconsistent with the overall purpose of rent control enactments.
Landlord further argues that to disallow the pass-through of the tax increase is discriminatory. Landlord assumes a hypothetical sale of a rental complex at a consideration greater than the assessment, in which event a consequent tax increase could be passed on to the tenants. The basic premise of that hypothetical is faulty. It presumes that the sales price would control the assessment when such is not necessarily the case. The selling price of a consummated sale of any real property under valuation review is only a guiding indicium of its fair value, L. Bamberger & Co. v. Tax Appeals Div., 1 N.J. 151 (1948), and the factors surrounding the sale must be weighed and appraised for special circumstances tending to increase or depress the sales price in derogation of its true value. Rek Investment Co. v. Newark, 80 N.J. Super. 552, 560 (App.Div. 1963).
Additionally, in landlord's hypothetical, the property remained a rental (investment) property, in which event the income approach to valuation is, in the vast majority of cases, employed. In Parsippany Hills Assoc. v. Parsippany-Troy Hills, 1 N.J. Tax 120 (1980), it was observed:
In valuing income producing property it is an accepted fact that a prospective purchaser's primary concern is with the anticipated return on his investment and not with the cost of construction or the price for which similar properties may be sold. .. . [I]t is to be noted that it can only be through the capitalization of income approach that the effect of rent control can be reflected. [Id. at 122-123.]
*468 Obviously the investor-purchaser (and assessor) would use the artificially controlled rental income of the subject and/or of comparable rental properties as the income to be capitalized. Although the resultant value may possibly exceed the existing assessment, it would not approach the increase brought about by a change in the form of ownership transaction (conversion) where the complex is no longer an income-producing property subject to controlled income but is comprised of individual unit owners (shareholders in a cooperative) who have purchased their units or shares in a free market and in which event the value is, in the vast majority of the cases, determined on the basis of the market data (sales) approach which will generally produce a greater value.
Landlord further claims that a purchaser of a converted unit which is occupied by a preconversion tenant has had no voice in the decision to convert and thus should not be forced to pay the higher taxes resulting from the conversion. Without being able to pass through to his tenant the tax increase a reasonable return could not be obtained; he could never recoup his investment because no prospective purchaser would buy into a losing venture. Thus, it is argued, his property has been confiscated without due process in violation of his constitutional rights.
While that argument is also speculative  it presumes that the initial price paid would not reflect any depressing factors  it was addressed in Berkley Arms Apartment Corp. v. Hackensack City, 6 N.J. Tax 260 (Tax Ct. 1983). The court said:
... while a gross sell-out price (based on outside prices) may represent the value of all interests it may not be, and here it is not, indicative of the price which would be paid for the property as a whole on the assessment date. As the gross sales potential, it simply represents the maximum amount that may be paid if all units were vacant and available for occupancy by the purchaser. In this situation, where the gross sell-out price represents the upper limit of value (a limit generally accorded to the cost approach), I conclude that a deduction from that base amount for the protected tenancy period is required.
This result, not unlike the effects of rent control, will probably cause a (temporary) shift of the tax burden. That shift however is not caused by this, or similarly situated taxpayers, nor does it come about by way of judicial *469 decree; rather it results from legislative fiat in the Legislature's attempt to accomplish the greatest good for the greatest number. [At 294].
Thus while the owner of a unit occupied by a protected tenant may not pass through to such tenant a conversion caused tax increase some relief may possibly be obtained through a tax appeal.
Landlord's reliance on Helmsley v. Boro. of Fort Lee, 78 N.J. 200 (1978), and Troy Ltd. v. Renna (3d Cir.1984), in support of its due process argument is misplaced. Helmsley dealt with the issue of a fair return on rental apartments subject to rent control; not apartments held as condominiums or cooperatives. Additionally, the Protected Tenancy Act did not come into existence until several years after that decision. In Troy, which upheld the constitutionality of the Protected Tenancy Act, although an argument was made concerning the interpretation of N.J.S.A. 2A:18-61.31 (prohibition against passing through conversion costs), the question was not decided. "Because the issue is not outcome determinative, we have no occasion to pass on this question." Id., p. 292, n. 6.
The Legislature has attempted to protect preconversion tenants. It has extended their tenancies following a conversion from a minimum of three years (N.J.S.A. 2A:18-61.2g) to a maximum of 40 years (N.J.S.A. 2A:18-61.23). In accomplishing this purpose it cannot be said that it was in the contemplation of the Legislature to permit the cost of occupancy, whether that cost be in the form of taxes or rents, during the protected period to escalate beyond reasonable rent increases or beyond the increases permitted in rent controlled communities.
Judgment will be entered in favor of defendants. Counsel for defendant-tenant will submit an appropriate order.
NOTES
[1] Following the original summary judgment hearing the matter was remanded to the Board to supplement the record. See Chirichello v. Monmouth Beach Zoning Bd. of Adjustment, 78 N.J. 544 (1979); Dunkin Donuts of N.J., Inc. v. North Brunswick Planning Bd., 193 N.J. Super. 513, 515 (App.Div. 1984). Prior thereto landlord's motion to certify the matter as a class action was granted as to both landlord and tenants, but his request to have the tax increase paid into an escrow fund was denied.
[2] At its meeting of September 29, 1983, the Board concluded that the alleged conflict of interest did not exist and that, in any event, the Board had no authority to disqualify said member.
[3] If the tax increase represented approximately 11% of the rent received, as was represented by landlord, the rent is approximately $250 per month.
[4] Even if the rent was $700 per month the tax increase would still surpass the allowable rent increase.