237 N.J. Super. 435 (1989)
568 A.2d 114
WAYNE PROWITZ, PLAINTIFF-APPELLANT,
v.
RIDGEFIELD PARK VILLAGE, DEFENDANT-RESPONDENT.
KATHLEEN DUNLEAVY, PLAINTIFF-APPELLANT,
v.
RIDGEFIELD PARK VILLAGE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1989.
Decided December 27, 1989.
*436 Before Judges PRESSLER, LONG and GRUCCIO.
Brian T. Campion argued the cause for appellants (Hartmann, Brooks & VanDam, attorneys).
Martin T. Durkin argued the cause for respondent (Durkin & Boggia, attorneys).
Alfred A. Slocum, Public Advocate, attorney for Amicus Curiae The Public Advocate of New Jersey (Stephen Eisdorfer, Assistant Deputy Public Advocate, on the brief).
Peter N. Perretti, Jr., Attorney General of New Jersey, attorney for Amicus Curiae State of New Jersey, Council on Affordable Housing (Michael R. Clancy, Assistant Attorney General, of counsel; Donald M. Palombi, Deputy Attorney General, on the brief).
John M. Payne, attorney for Amicus Curiae Alliance for Affordable Housing.
Sherman, Silverstein & Kohl, attorneys for Amicus Curiae Institute of Multi-Family Housing of New Jersey, Inc. (Robert M. Washburn, of counsel and on the brief).
Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys for Amicus Curiae Hovnanian Enterprises, Inc. (Douglas K. Wolfson and Peter J. Zipp, on the brief).
Vaida & Vaida, attorneys for Amicus Curiae New Jersey State League of Municipalities and New Jersey Institute of Municipal Attorneys (David Vaida and Frederick G. Stickel, III, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
*437 The issue raised by these consolidated taxpayers' appeals from judgments of the Tax Court is whether the local real property assessment of a single-family residential unit that constitutes part of a municipality's "official" affordable housing stock must take into account a deed restriction which, in order to ensure the unit's continuing status as affordable housing, limits its resale value to its initial purchase price plus consumer price index increases. The Tax Court concluded that such a deed restriction has no assessment significance. We disagree and reverse.
The underlying facts, essentially stipulated, are recited in the Tax Court's opinion reported at 10 N.J. Tax 103 (Tax Ct. 1988). Defendant Village of Ridgefield Park is a Bergen County municipality with a population of 12,500, one of the lowest per capita incomes of the county's 70 municipalities and the tenth highest tax rate in Bergen County, a situation largely attributable to the amount of tax-exempt land within its boundaries, mostly state highways. The subject premises are single-family condominium units constructed and sold as part of the Bergen County Housing Authority's affordable housing program.
As we understand the record, the Authority, because of federal restrictions on its financing modalities, operates its affordable housing program through the instrumentality of the Housing Development Corporation of Bergen County (HDC), a nonprofit corporation which it controls. In the early 1980s, HDC acquired several parcels of land in Ridgefield Park on which it constructed condominium projects that were the subject of master deeds complying with the requirements of N.J.S.A. 46:8B-8. After the Authority had made the required determinations of "low or moderate" financial eligibility, plaintiff Wayne Prowitz purchased a unit in the Highland Place project from HDC in 1983 for $42,500, and plaintiffs Denis and Kathleen Dunleavy purchased a unit in the Preston Hill project from HDC in 1981 for $40,000. The master deeds for these *438 projects, as well as the individual unit deeds, imposed severe restrictions on the purchasers' respective resale rights. Thus, the deeds accorded HDC an exclusive first option to purchase the unit at the original sale price plus a consumer price index factor and further provided that if the option was not exercised, the unit owner would be obliged to sell at that price "to an income eligible family as determined by the Bergen County Housing Authority." Once an eligible purchaser has bought a unit, however, he is entitled to remain in ownership and occupancy even if he thereafter exceeds the income-eligibility limitations necessary for initial purchase.
It is also stipulated that the Authority's affordable housing program antedates the enactment of the Fair Housing Act of 1985, N.J.S.A. 52:27D-301 et seq., the appointment of the Council on Affordable Housing (COAH) as therein required, and the promulgation of regulations by COAH, see N.J.A.C. 5:91 and 5:92. Nevertheless the Authority's guidelines under which it and HDC operate the affordable housing program are generally consistent with the spirit, purpose, policy and provision of the Act and the COAH regulations. Moreover, the parties agree that the units in question are creditable to Ridgefield Park as affordable housing units within the intendment of the Act even though the Village has never been a defendant in Mount Laurel litigation[1] or a party to COAH administrative proceedings. Finally, the question of the Village's assessment practice in respect of the affordable housing units was not a matter ever discussed by the Village with the Authority or agreed to by it during the course of its voluntary cooperation with the Authority.
The Village underwent a general reevaluation for tax year 1986. As part of that undertaking, it determined that the affordable housing units should be assessed on the basis of fair *439 market value without consideration of the deed restrictions on resale. Accordingly, it increased plaintiff Prowitz's total assessment to $86,300 and plaintiffs Dunleavy's total assessment to $84,600. Plaintiffs appealed to the Bergen County Board of Taxation, taking the position that while their respective assessments would have been fair had there been no resale restriction, the restriction reduced the fair market value to the maximum resale price available under the deed formula as of October 1, 1985, in the case of Prowitz, to $46,987, and in the case of Dunleavy, to $46,864. The County Board of Taxation rejected this contention, and plaintiffs appealed to the Tax Court, which affirmed both assessments.
We are persuaded that while the maximum resale price obtainable under the deed restriction does not necessarily define assessable value, the resale restriction nevertheless is a factor that must be considered in fixing the assessment. We start our analysis, as did the Tax Court, with recognition of the constitutional mandate that all real property must be "assessed according to the same standard of value," N.J. Const. (1947), Art. VIII, § 1, para. 1, and of the implementing legislative mandate that that standard is true value. N.J.S.A. 54:4-2.25. The Legislature has, moreover, given substantive content to the true-value standard by requiring the assessor to "determine the full and fair value of each parcel of real property at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract." It is obvious that full and fair value of these units, as so defined, is substantially affected by their maximum resale price under the deed restriction. The question, then, is whether there is any reason in law for denying this self-evident proposition any assessment relevance. We see none.
We are aware that there are categories of circumstances that reduce the actual value of property without affecting its assessable value. But these are ordinarily circumstances implicating the character, quality and extent of the owner's title and not permanently or indefinitely burdening the land itself. Thus, in *440 the seminal opinion in Englewood Cliffs v. Estate of Allison, 69 N.J. Super. 514, 525-526 (App.Div. 1961), this court made clear the distinction between an encumbrance on title and a burden on the land itself. An encumbrance on title, such as a mortgage, a lease or a cloud, is typically a matter of temporary duration, of a "curable" nature, personal to the owner, collateral to the use of the land itself and generally representative of the separate legal interests into which a single title may be divided. An encumbrance on the land, on the other hand, affects its use and disposition entirely apart from title considerations, characteristically including easements, restrictions and government regulations.
Title encumbrances do not usually affect valuation for assessment purposes because it is the whole title, and not just the partial interest which the taxpayer enjoys, which must be assessed. As explained by Judge Clapp in Stack v. Hoboken, 45 N.J. Super. 294, 300 (App.Div. 1957), this is because
[i]n assessing the value of land, account should not be taken of the condition of title of the alleged landowner or of any cloud upon it; nor should account be taken of the possibility that he would be unwilling to sell it because of an understanding with his grantor, or of the possibility that a purchaser would be put on notice that this grantor has an equitable interest in the property. The law requires an assessment of the value, not of the purported owner's title, but of the land; the assessed value of the land represents the value of all interests in the land.
See also Town of Secaucus v. Damsil, Inc., 120 N.J. Super. 470 (App.Div.), certif. den. 62 N.J. 90 (1972).
Burdens on the land itself, however, which transcend individual or particular ownership, ordinarily have been required to be taken into account in assessing value. Thus, an easement appurtenant has been held to result in an assessment-cognizable reduction in value of the servient tenement and a concomitant increase in the value of the dominant tenement. Significantly, Englewood Cliffs v. Estate of Allison involved not an easement appurtenant but an easement in gross for the benefit of the public. The court recognized that the effect of such an *441 easement is nonetheless a diminution of the value of the encumbered property, and concluded that
it is immaterial for assessment purposes whether the fee owner holds a title subject to a private easement for the benefit of a dominant tenement, a public easement in a dedicated and accepted street, or public rights to use and enjoy a park under charitable trust. In each case the land has been deprived of an element of value to be subtracted from the value of the fee. Possibility of adding that element in whole or part to other property, as in the case of a dominant tenement, is not the controlling factor. The assessor's duty is to determine true value of the property being assessed; he should not include elements of value transferred to other properties or transferred to the community at large in the form of public rights. [69 N.J. Super. at 529]
And see Village of Ridgewood v. Bolger Foundation, 104 N.J. 337 (1986), so holding as to a conservation easement given to preserve open space but without conferring any direct public right of access, use or enjoyment.
In Estate of Allison, the court also recognized that what is true of easements is also true of restrictive covenants, noting that "[t]here should be a similar deduction when assessing land which has been burdened by a restrictive covenant for the benefit of neighboring properties." 69 N.J. Super. at 526. By the same reasoning, a restrictive covenant burdening land for the benefit of the public is, like an easement in gross, a value-reducing circumstance for assessment purposes.
Instructive of the interplay and distinction between the "totality of interest" principle and the value-reducing deed restriction is In re Appeal of Neptune Tp., 86 N.J. Super. 492 (App. Div. 1965), which involved both. There, a nonprofit association, serving the interests of its private membership, obtained from the municipality a deed to a strip of river-bank land located in a residential area for use as a bathing beach club. The deed limited the use of the property to that purpose and provided for a reversion to the grantor in the event of a cessation or conversion of that use. The association argued that its legal title, by reason both of the reversion and the restriction, was tantamount only to a use license and hence not taxable at all. The court rejected that argument, viewing the reversionary interest of the grantor as affecting the character of the owner's *442 title rather than the value of the land. Significantly, however, the court also rejected the assessor's valuation technique of applying to that parcel the assessment criteria he regularly applied to residential property. The property, the court held, had to be assessed according to its market value as a bathing beach club. Id. at 500. Thus, while the court applied the totality-of-interest principle in respect of the reversion, it also recognized the assessment consequences of the restriction.
Akin to the depreciating effect on value of a restrictive covenant which impinges upon the owner's freedom to use and dispose of the property at will is the whole gamut of governmental regulation imposing like restraints. Such regulation, as recently confirmed by the Supreme Court in Inmar Associates, Inc. v. Borough of Carlstadt, 112 N.J. 593, 604 (1988), also affects the value of real property for local property tax purposes. Inmar Associates, Inc. so held in respect of the governmentally imposed environmental cleanup requirements therein at issue. But the Court also there recognized that the same consequence flows from zoning regulations, Pinelands development controls, flood plain regulations, and sewage disposal requirements, provided the governmental restraint is neither temporary nor subject to cure. Ibid. See also Schwam v. Cedar Grove Tp., 9 N.J. Tax 406 (Tax Ct. 1987), aff'd 228 N.J. Super. 522 (App.Div. 1988), so holding in the context of the Senior Citizens and Disabled Protected Tenancy Act, N.J.S.A. 2A:18-61.22 et seq., which affords protected tenancy status to occupants of apartments converted to condominium ownership, thereby reducing the value of a converted unit occupied by a member of the protected class.
We are persuaded that application of the foregoing legal principles compels the taxpayer relief here sought. The deed restriction limiting resale price constitutes a patent burden on the value of the property, not on the character, quality or extent of title. It is, moreover, a restriction whose burden on the owner is clearly designed to secure a public benefit of overriding social and economic importance, namely, the maintenance *443 of this State's woefully inadequate inventory of affordable housing. See, generally, N.J.S.A. 52:27D-302, stating the legislative findings in support of the adoption of the Fair Housing Act. Obviously, it makes no difference in those terms if the owner, at some time after the commencement of his occupancy and by reason of the success of his work effort, exceeds the income limitations for eligibility for initial purchase. That is just the point. It is not a potential benefit to any specific affordable-housing unit owner with which the resale restriction is concerned, but rather the benefit to the public that is vouchsafed by indefinitely maintaining that unit in the affordable housing stock. And it is that public benefit which is the quid pro quo of the concomitant value-depreciating burden of the restriction.
We also deem the restriction here analogous to value-depreciating government regulation. Thus, the provision of a fair share of affordable housing is, by reason of the Fair Housing Act, a municipal obligation imposed by statute, and the perpetuation of that stock by resale restrictions is a matter of implementing COAH regulation. The restriction here, to be sure, antedates COAH, but the municipal obligation had been already defined by Mount Laurel, and it was in evident fulfillment of the Mount Laurel obligation that the Authority, HDC and Ridgefield Park proceeded with these projects.
We note, moreover, the conceptual similarity between the deed restriction here and the protective statute the Tax Court addressed in Schwam v. Cedar Grove Tp., supra. In both, the market value of the property, that is, the amount which a bona fide buyer would otherwise pay a bona fide seller in an armslength transaction, is significantly affected by governmental action taken for the beneficent public purpose of advancing and protecting the housing needs of classes of persons legislatively determined to require housing assistance. The form of that assistance here relevant is the imposition of a value-depreciating burden upon private ownership. That direct burden is justified on the basis of paramount public policy. It is fundamentally *444 fair then for the public to share that burden with private ownership at least to the extent of recognizing, for tax assessment purposes, the market-place consequences of the restriction. We agree with the observation of Judge Crabtree in Schwam, supra, 9 N.J. Tax at 416, that there is an apparent element of injustice in imposing an onus on municipal taxpayers that enures to the benefit of the State as a whole. But that is the consequence of the Legislature having made no specific provision for the allocation of the ensuing tax burden between local and State government. It is also, of course, a consequence of the nature of this State's real property tax base. But these are not matters before us or which the judiciary has a present competence to correct.
The judgments appealed from are reversed. We remand to the Tax Court for proceedings to fix the value of the taxpayers' respective property taking the restriction into account.
NOTES
[1] See So. Burl. Cty. N.A.A.C.P. v. Tp. of Mt. Laurel, 67 N.J. 151 (1975); So. Burlington Cty., N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158 (1983).