PER CURIAM.
In these two appeals[1], defendant City of Elizabeth (City) challenges two judgments entered by the Tax Court fixing the assessed value of plaintiff Elizabeth Center Apartments Urban Renewal Corporation’s (Center) cooperative apartment building *282 for the years 2006 and 2007. In its two judgments, the court reduced the City’s assessment from $1.3 million for each year to $690,000 for 2006 and $590,000 for 2007. We affirm those determinations substantially for the reasons stated in Judge Mary Siobhan Brennan’s thorough and well-reasoned opinion reported at 27 N.J.Tax 196 (Tax 2013).
The Center is an affordable housing cooperative apartment corporation[2] formed almost fifty years ago pursuant to federal housing laws and regulations. It operates under a regulatory agreement with federal housing and mortgage funding agencies. Pursuant to those agencies’ requirements, the sales price of an individual owner’s interest in the Center is limited to its 1966 level. The Center’s dispute with the City is about the manner in which the Center’s real estate’s value is assessed for real estate tax purposes.
In an earlier appeal filed by the Center, we addressed the City’s assessments for the years 2003 through 2005[3] and affirmed the Tax Court’s reliance on the Supreme Court’s opinion in Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-13, 495 A.2d 1308 (1985) finding that, based on the evidence presented then, the Center failed to overcome the presumption of correctness for municipal assessments. Specifically, we agreed that the Center “failed to provide evidence that the City’s Tax Assessor neglected to consider the sales restriction affecting resale of the co-operative apartments.” [4] Elizabeth Center Apartments, Urban Renewal Corp. v. *283 Elizabeth City, No. A-3383-06, 2007 WL 4355517 (App.Div. December 14, 2007) (slip op. at 2). In the present appeal by the City, we are asked to review the Tax Court’s opposite determination for 2006 and 2007 in which there was no dispute that the Tax Assessor did not consider the restriction on the sale of cooperative units.
In Judge Brennan’s recent opinion, the Tax Court determined that not only did the Center overcome the presumption[5] but that the City was obligated to assess the Center’s property by considering the restrictions that were imposed by the Center’s controlling regulatory agreement on the prices of units offered for sale by the Center’s shareholders, as the court deemed required by our opinion in Prowitz v. Village of Ridgefield Park, 237 N.J.Super. 435, 568 A.2d 114 (App.Div.1989), aff'd, 122 N.J. 199, 584 A.2d 782 (1991). Judge Brennan then went on to accept the Center’s expert, Gary Manzione’s approach for determining value which applied the method adopted in Southbridge Park, Inc. v. Borough of Fort Lee, 4 N.J.Tax 30 (Tax 1981), aff'd, 6 N.J.Tax 351 (App.Div.1984).
On appeal the City argues:
I. PROWITZ [Prowitz] DOES NOT CONTROL THIS CASE BECAUSE THE RESTRICTIONS ON SALE PRICE ARE NOT CONTAINED IN DEED RESTRICTIONS AND DO NOT RUN WITH THE LAND.
*284 II. THE TRIAL COURT SHOULD HAVE REJECTED MR. MANZIONE’S FIRST APPROACH BECAUSE IT WAS NOT BASED ON SALES THAT WERE EXPOSED TO THE MARKET.
III. THIS COURT SHOULD REJECT MR. MANZIONE’S SECOND APPROACH BECAUSE IT WAS NOT BASED ON SALES THAT WERE EXPOSED TO THE MARKET.
We find no merit to these arguments and hold that our decision in Prowitz does require the consideration of the sale restrictions in this case, even though they are not contained in a Master Deed or other recorded instrument.
At the outset, we note the well-settled principles that guide our review of Tax Court determinations. Our scope of review in these matters is circumscribed. We recognize the expertise of the Tax Court in state tax matters and will not disturb its rulings unless we find its rulings are arbitrary or its findings of fact are unsupported by substantial credible evidence in the record. We do not, however, defer to the Tax Court’s legal determinations. “Our review of those conclusions is de novo.” UPS v. Dir. Div. of Tax., 430 N.J.Super. 1, 8, 61 A.3d 160 (App.Div.), certif. granted, 216 N.J. 5, 75 A.3d 1160 (2013). The City’s challenge in this case focuses on the proper method for assessing the Center’s property, which is a legal question that we review de novo. Southbridge, supra, 4 N.J.Tax at 34-35 (citations omitted).
The history of the formation of the Center, its purpose to provide affordable housing to the residents of the City, and the nature of its property are set forth at length in Judge Brennan’s opinion and need not be repeated here. Elizabeth Center Apts., supra, 27 N.J.Tax at 199-201. In summary, as we also noted in our earlier opinion, the Center is “a not-for-profit corporation operating under the auspices of the Federal Housing Administration (FHA) and the Department of Housing and Urban Development (HUD). The building consists of a total of 260 low- and moderate-income co-operative apartments.” Elizabeth Center Apartments, Urban Renewal Corp., supra, (slip op. at 1-2).
The Center’s formation predated by decades the enactment of affordable housing statutes in this state as we know them today. *285 See e.g. N.J.S.A. 52:27D-301 to -329.4 (“Fair Housing Act of 1985”). Importantly, as found by Judge Brennan, the lynchpin to the Center’s utility as a tool to bring affordable housing to the city was the restriction imposed on the sales price of any unit through the Center’s entry into a regulatory agreement with the FHA that “run[s] with the land so long as there is a mortgage on the [Center’s property] that is either insured or owned by HUD.” Elizabeth Center Apts., supra, 27 N.J.Tax at 200. The effect of the regulatory agreement was to limit sales prices to 1966 levels so that the value of a shareholder’s certificates “will never appreciate in market value and no member will profit upon its subsequent sale.” Ibid. The limitation on sales price as well on the income levels of prospective purchasers were incorporated into the Center’s by-laws as required by FHA. And, the Center could not amend its by-laws without the approval of the FHA.
The thrust of the City’s argument in this appeal is that those restrictions on the sale price of shares, which have existed for almost fifty years, are temporary in nature. According to the City, the minimal principal balance of the existing HUD mortgage — originally almost $4.7 million dollars and, as of 2006, approximately $400,000 — can be satisfied at any time, if it has not already been paid. The Center can then amend its by-laws to free itself of the FHA’s restrictions. According to the City, because of the mortgage’s temporary nature, our holding in Prountz, supra, does not apply and the City, therefore, properly did not consider the restriction on sale price in its valuation of the Center’s property. We disagree.
As we discussed in Prowitz, governmental regulation, like a deed restriction, that limits the resale value of property, is a factor to be considered by a tax assessor when determining assessed value. Judge Brennan accurately and succinctly summarized our holding and reasoning in Prowitz before she applied its holding to the present case:
In Prowitz v. Village of Ridgefield Park, supra, the Appellate Division addressed whether the property assessment of a single-family residential unit, which comprised a portion of the municipality’s official affordable housing stock, must consider a deed restriction that limits the unit’s resale value to its initial purchase *286 price plus Consumer Price Index increases in order to ensure the unit’s continuing status as affordable housing. 237 N.J.Super. at 437 [568 A.2d 114]. The Prowitz court held that “while the maximum resale price obtainable under the deed restriction does not necessarily define assessable value, the resale restriction nevertheless is a factor that must be considered in fixing the assessment.” Id. at 439 [568 A.2d 114]. This court finds that the same holds true for the Taxpayer in the present matter. While individual Taxpayer members are enjoying home ownership at below-market financing, they do so without the ability to make a profit at the time of sale. This in turn helps to perpetuate the City’s low to moderate income housing stock.
The rationale of the Prowitz opinion was stated concisely and articulately and thus bears repeating:
We ... deem the restriction here analogous to value-depreciating government regulation____
We note, moreover, the conceptual similarity between the deed restriction here and the protective statute the Tax Court addressed in Schwam v. Cedar Grove Tp., supra. In both, the market value of the property, that is, the amount which a bona fide buyer would otherwise pay a bona fide seller in an arms-length transaction, is significantly affected by governmental action taken for the beneficent public purpose of advancing and protecting the housing needs of classes of persons legislatively determined to require housing assistance. The form of that assistance here relevant is the imposition of a value-depreciating burden upon private ownership. That direct burden is justified on the basis of paramount public policy. It is fundamentally fair then for the public to share that burden with private ownership at least to the extent of recognizing, for tax assessment purposes, the market-place consequences of the restriction. We agree with the observation of Judge Crabtree in Schwam ... that there is an apparent element of injustice in imposing an onus on municipal taxpayers that [i]nures to the benefit of the State as a whole. But that is the consequence of the Legislature having made no specific provision for the allocation of the ensuing tax burden between local and State government. It is also, of course, a consequence of the nature of this State’s real property tax base. But these are not matters before us or which the judiciary has a present competence to correct.
Although the Prowitz decision involved a deed-restricted property, this court does not interpret that decision to exclude the non-deed restrictions imposed on the Taxpayer.
[Elizabeth Ctr. Apartments Urban Renewal Corp., supra, 27 N.J.Tax at 211-12 (quoting Prowitz, supra, 237 N.J.Super. at 443-44, 568 A.2d 114 (citations omitted)).]
In Prowitz, supra, 237 N.J.Super. at 442-43, 568 A.2d 114, we determined that the impact of “value-depreciating government regulations,” including those that required a deed restriction’s limiting sales in affordable housing projects, must be taken into account in a municipality’s assessment of a property where its purpose is dedicated to a “paramount public policy” goal.
*287 We disagree with the City that because the FHA mortgage encumbering the Center’s property can be satisfied by the Center, the public policy reasoning behind the regulatory agreement’s and by-laws’ imposition of sales restrictions is not a factor to be considered. The City’s argument ignores the undisputed facts that the Center has operated under those agreements and regulations for almost fifty years for the sole purpose of providing affordable housing and that it cannot do anything to amend its corporate structure without approval from the governing agencies.[6] There is nothing temporary about the limitations imposed on the sale units in the Center’s property. They continue to exist today as they have for decades and until the federal government approves their removal, if ever, they must be considered in the property’s valuation. The limitation imposed “transcend individual or particular ownership [and are] required to be taken into account in assessing value.” Id. at 440, 568 A.2d 114.
In light of our agreement with Judge Brennan’s decision regarding the impact of the restriction on the shareholder’s certificates, we find that the City’s remaining arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(A) and (E). The court’s calculation of the Center’s property’s proper assessment for 2006 and 2007, applying the method adopted in Southbridge, supra [7], for assessing cooperative units and recognizing the unique nature of the Center’s property’s value because of the restrictions, Hackensack Water Company v. Borough of Old Tappan, 77 N.J. 208, 215, 390 A.2d 122 (1978), was well within the court’s discretion, expertise and authority. N.J.S.A. 54:51A-6. In fact, other than the consideration of the restriction’s impact, both the Center’s and the City’s expert’s *288 agreed that the method applied was correct in all other aspects. Judge Brennan was free to accept or reject the balance of either expert’s methods, in whole or part, in calculating the proper assessments. Southbridge Park Inc. v. Borough of Fort Lee, 201 N.J.Super. 91, 94, 492 A.2d 1026 (App.Div.1985). We have no reason to disturb her decision.
Affirmed.

We consolidated these appeals for the purpose of issuing a single opinion.

 As noted by Judge Brennan, the Appraisal Institute defines a cooperative as a " 'form of ownership in which each owner of stock ... receives a proprietary lease on a specific apartment and is obligated to pay a monthly maintenance charge that represents the proportionate share of operating expenses and debt service on the underlying mortgage, which is paid by the corporation.’ ” Elizabeth Center Apts., supra, 27 N.J.Tax at 199, n. 1 (quoting Appraisal Institute, The Appraisal of Real Estate, 127 (13th ed.2008)).

 Elizabeth Center Apartments, Urban Renewal Corp. v. Elizabeth City, No. A-3383-06, 2007 WL 4355517 (App.Div. December 14, 2007).

 We also noted that contrary to the Center’s argument, ”[t]he judge did not ignore the restriction on sale; rather he pointed out that outside sales had to be *283 considered along with the restriction on sale, and that the Center's failure to do so was not consistent with the sales approach. The judge's criticism of [the Center's expert] Manzione's approach was based upon the failure to seek out comparable values, a methodology that is well established in our jurisprudence." Elizabeth Center Apartments, Urban Renewal Corp. v. Elizabeth City, No. A-3383-06, 2007 WL 4355517 (App.Div. December 14, 2007) (slip op. at 8).

 In this case, Judge Brennan found
... that the [Center] presented sufficient evidence to overcome the presumption of validity attached to the City's original tax assessment. Both the [Center] and the City's expert acknowledged that the Subject Property as restricted is a market in and of itself....
The search for comparable sales most similar to the Subject Property was a problem that both expert appraisers acknowledged____ With a lack of comparable outside sales, the focus then shifts to the sales within the Subject Property.
[Elizabeth Center Apts., supra, 27 N.J.Tax at 208.]

 Also, It is notable that the restriction could not be incorporated at inception as a deed restriction in the Center's master deed because that type of recording device did not exist until years later. See N.J.S.A. 46:8D-1 to -18 ("The Cooperative Recording Act of New Jersey”).

 That "method of valuing the subject property places predominant reliance on the sales of stock and proprietary leases applicable to each apartment unit____" Southbridge, supra, 4 N.J.Tax at 37.